AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico ▾

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
IN THE MATTER OF THE SEARCH AND SEIZURE OF A GRAY SAMSUNG CELLULAR PHONE THAT IS STORED AT THE FBI BELONGING TO DONALD WALTER FOWLER

)
)
)
)
)
)
)

Case No.  **23 MR 2329**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

located in the _____ District of _____New Mexico_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 US.C. § 875(c) | Threatening Communications |

The application is based on these facts:

See attached affidavit, submitted by FBI SA Armida Maria Macmanus and approved by AUSA Niki Tapia-Brito.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Armida Maria Macmanus, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephonically sworn and electronically signed _____ *(specify reliable electronic means)*.

Date:  12/19/2023

*Judge's signature*

City and state:  Albuquerque, New Mexico

B. Paul Briones, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to Be Searched*

This warrant applies to records and information associated with a gray Samsung cellular telephone assigned call number **(330) 421-7069** ("SUBJECT PHONE"), that is stored at premises controlled by the Federal Bureau of Investigation.

**ATTACHMENT B**

*Item to be Searched*

Evidence of a violation of 18 U.S.C. § 875(c) Threatening Communications, as it relates to the threat made to the Victim on October 26, 2023, and the October 3, 2023 Las Cruces Police Department (LCPD) Officer Involved Shooting (OIS), **from October 17, 2023 to November 28, 2023**, including the following item:

1. A gray Samsung cellular telephone, possessed and accessible by Donald Walter Fowler on November 28, 2023, at the time of his arrest, and information stored on such communication device, including:

   a. Audio and video calls made to or from the communication device, along with the duration and date and time each communication occurred;

   b. Any message logs or messages, whether sent from, to or drafted on the communication device, along with the date and time each such communication occurred;

   c. The content of voice mail messages and audio and video messages stored on the communication device, along with the date and time each such communication occurred;

   d. Photographs or video recordings;

   e. Information relating to the schedule, whereabouts, or travel of the user of the communication device;

   f. Information relating to other methods of communication, including the contents of those communications, utilized by the user of the communication device, and stored on the communication device;

g.  Evidence of user attribution showing who used or owned the communication device,

which may include some of social media accounts, email addresses, messages,

location information, photographs and videos, phonebooks, saved usernames and

passwords, documents and internet browsing history, similar to subscriber

information or used just to show who was using the communication device.

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A GRAY SAMSUNG CELLULAR PHONE THAT IS STORED AT THE FBI BELONGING TO DONALD WALTER FOWLER | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Armida Maria Macmanus, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property---electronic device---which is currently in the possession of the Federal Bureau of Investigation, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since November 2005. I am currently assigned as a Special Agent for the Albuquerque Division at the Las Cruces Resident Agency in Las Cruces, New Mexico. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including violations of Title 18 of the United States Code. My experience as a Special Agent includes but is not limited to: conducting physical surveillance; interviewing witnesses; writing affidavits for and executing search warrants; working with undercover agents and informants; issuing administrative and federal grand jury subpoenas; and analyzing financial records, telephone records, and data derived from the use of pen registers and trap and traces; and

assisting in wiretap investigations.  I have conducted or participated in investigations of subjects alleged to have violated Title 18 U.S.C. § 875(c) Threatening Communications.

3.        The following information contained in this affidavit is based on my training and experience, my personal participation in this investigation, and information provided to me by other law enforcement officials. Unless otherwise indicated, where I have referred to written or oral statements, I have summarized them in substance and in part, rather than verbatim. Not all the facts of the investigation known to me are contained herein, only those necessary to establish probable cause to search the below-listed item pertaining to the captioned investigation. As will be shown below, there is probable cause to believe that evidence of a violation of 18 U.S.C. § 875(c) Threatening Communications will be found on the item listed in Attachment B, which is in the custody of the FBI, and which belongs to Donald Walter Fowler.

## IDENTIFICATION OF THE PLACE TO BE SEARCHED

4.        The property to be searched is a gray Samsung cell phone belonging to Donald Walter Fowler, which is located at the FBI.

5.        The applied-for warrant would authorize the forensic examination of the Samsung cell phone for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTE

6.        Title 18 U.S.C. § 875(c) Threatening Communications states, "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."

## PROBABLE CAUSE

7.      On October 26, 2023, the FBI received information from Andrew Sanchez, Investigator, 3rd Judicial District Attorney's Office for the District of New Mexico, that a threatening voicemail message had been discovered by an employee (herein Victim) of the District Attorney's (DA's) Office in Dona Ana County, New Mexico, on that day.

8.      I reviewed an email from Sanchez that contained an attachment, which was a recording. I also observed text content within the email that read, in part, "From: Mitel Voice Mail <do not reply@mitelcloud.com> Date: October 26, 2023, at 10:51:59 MDT, To: Victim Victim@da.state.nm.us Subject: Mitel voice message from Caller Out of Area for mailbox…"

9.      I listened to the recording and heard the following statements:

Caller: "Hey, you stupid nigger. I guess, ugh, cops just give you extra blow jobs when they shoot people in the back…that's why you don't charge them…for that blue line gang? You're a filthy corrupt fucking nigger. I hope you and your family get what's coming to you. And for that cop, holy shit…how is she trespassing? She has to be asked to leave. And what's with that fucking officer, fucking swearing at her every fucking five fucking seconds? You mother fucker. You're not going to hold your officers accountable? Cause if they give you a good blow job? I guess we are going to have to. And then you can be on tv crying and whining I can't believe this happened why would people treat us this way…because you don't hold yourselves accountable you fucking dumb nigger. There should be a noose in your future."

10.     I learned that the DA's office has one employee, the Victim, who is African American. This observation coincides with the context in which the threat was made, which was

the use by the caller numerous times of a racial slur and a reference to a "noose" being in the Victim's future.

11.     I also learned from Sanchez that Mitel, the company who services the DA's office phone system, manages calls into the DA's office in two ways.  First, a caller may speak to an operator that will transfer the call to the specified recipient or Mitel's automated system feature will provide the caller an opportunity to search the recipient's name in the directory or enter an extension/mailbox number.

12.     I read several reports pertaining to this case that were authored by FBI Special Agent Sean Macmanus, who is assigned to the FBI's Cellular Analysis Survey Team (CAST).  I learned from the reports that a blocked phone number was listed in the Mitel records as having called the Victim at approximately 10:51 a.m. on October 26, 2023.  After contacting Verizon, a cellular service provider, and requesting voluntary records from Verizon due to an exigent circumstance, SA Sean Macmanus reviewed the records and determined that a cellular phone (SUBJECT PHONE), assigned number (330) 421-7069, called the DA's office at approximately 10:49 a.m. on October 26, 2023.  The call lasted approximately two minutes.  This amount of time is consistent with the length of the recording and the time it would take someone to call and connect to the Victim's voicemail.  Additionally, Verizon records revealed the user of the SUBJECT PHONE number dialed *67, which is a feature used to block a phone number while making a call.  SA Sean Macmanus also determined that Donald Fowler was listed as the subscriber of the SUBJECT PHONE.  Verizon records also listed an address for Fowler in Lodi, Ohio.  SA Sean Macmanus learned that the SUBJECT PHONE used a cell phone tower located in Ohio at the time the threat was made.

13.     I reviewed a criminal history check for Fowler, which revealed an arrest in 1999 for domestic violence and two drinking under the influence charges in Ohio.

14.     On or about October 26, 2023, I spoke with Jon Day, Major, Dona Ana Sheriff's Office (DASO), regarding the threat made to the Victim.  Day informed me that DASO deputies would conduct continuous patrols in the neighborhood where the Victim and his family reside.  I also learned from Day that the New Mexico State Police (NMSP), the United States Marshal Service (USMS) and the Las Cruces Police Department (LCPD) were notified of the threat to the Victim and that patrol officers from these agencies would assist in conducting additional patrols in support of the investigation.

15.     On November 8, 2023, FBI Supervisory SA Rick Perkins met with the Victim and learned the following: Due to the threat made against the Victim and his family, the Victim has experienced both psychological and physiological changes.  After he learned of the threat, the Victim experienced anxiety similar to what a member of the military experiences when deployed, where every potential personal encounter is a threat.  The Victim characterized the threat as overt and directed towards him and his family.  Particularly, the use of the "n-word" and "a noose in your future," was a racial animus directed at the Victim and his family with the purpose of creating fear and intimidation.

16.     On November 16, 2023, FBI Agents in Ohio approached Donald Fowler and conducted an interview.  Fowler initially denied leaving a threatening voicemail in New Mexico to anyone.  However, when asked if he knew anything about leaving a message at the DA's office in New Mexico, Fowler responded, "Not at the DA's office."  When asked if he left a message for somebody in New Mexico, Fowler said, "Maybe somebody in New Mexico."  Agents asked Fowler why he left a message in New Mexico, Fowler said probably because of

the crime the cops committed.  When asked to be more specific and Fowler said he would not

remember what it was.

17.    Fowler said there are videos (presumably of corruption and police misconduct) all

over the place and that there is no problem redressing the government.  Fowler said that that they

(presumably the government) are coming after people and the government is saying they don't

"do nothing," and the people can't redress the government and "you can't do nothing without

being pinned against the wall for it."

18.    Fowler appeared frustrated about the situation within government.  As Agents

told Fowler that a person can't threaten someone, Fowler asked, "Just to say, 'I hope bad shit

happens to you?'" Agents explained to Fowler that he probably would not like it if someone

threatened his family, to which he said, "They're in a public office."  Based on my review of the

recorded interview, I believe Fowler knew that the Victim is an elected public official, and

Fowler was justified in his actions due to the Victim holding a public position.

19.    Agents asked why a particular case in New Mexico upset him, and Fowler

responded, "Because you turn the news on every fucking day, and you see this shit happened and

nobody does a damn thing about it.  So now, [you] redress your government and now you get in

trouble for redressing your government.  Maybe it's not nice to say, 'I hope something bad

happens to you and your family.' Where the hell's the compassion or anything where… where's

anything going that they do anything against the cops and the brutality and just the ugh, whole

bullshit over it."

20.    Fowler said he didn't know which video it was that pertained to this investigation

and then questioned why the government always says to "let it play out" and "let it go through

the system."  Fowler began talking about another separate incident where a video showed five

cops beating someone to death while handcuffed and then being let out on bail. Fowler then said, "Wait for it to play out . . . it's on camera . . . beat a guy in handcuffs to death . . . let it play out . . . No, we are investigating ourselves . . . we will take care of it."

21.     Fowler continued to discuss other cases of police brutality and felt overall, everyone covers up for one another. Fowler did not agree with the sentiment to give something time and let something "play out" and if one goes into public office, they will be scrutinized.

22.     Fowler did not provide his cell phone number to Agents. Fowler said he had not left the state of Ohio since 2015 and told Agents they could be reassured he was not going to travel to New Mexico and harm anyone. Fowler said, "When something bad happens to somebody else when they do nothing to stop anything I don't understand why that's bad to say, 'an eye for an eye'" Fowler then said, "I understand what you are saying, I'm just...every time it just ramps me up and just pisses me off and there is no accountability whatsoever."

23.     I am aware of a Las Cruces Police Department (LCPD) Police Officer who shot a woman on October 3, 2023, as she fled in a vehicle. This Officer Involved Shooting (OIS) made national news. In the threatening voicemail left to the Victim, the caller referred to several details which matched the LCPD OIS. I believe Fowler learned of this OIS, which motivated him to threaten the Victim.

24.     In my investigation, I learned that the DA's office is investigating the OIS Fowler appeared to be referencing. Due to his official capacity as an elected official, the Victim maintains an online presence, which includes his photo, identifying him as a Black/African American male. It is my belief, based on my training and experience, that Fowler would have had to conduct some online searches to locate information about the victim and to identify his

office phone number to place the call and reference his race in the derogatory manner that he did.

25.     I observed a press conference on October 17, 2023, which was broadcasted by LCPD via YouTube, wherein LCPD Interim Chief Jeremy Story provided information about the LCPD OIS.  During the press conference, a partial video from a body worn camera depicting the events leading up to the OIS was made public.  Details about the various agencies conducting the investigation into the OIS were given.  I believe, based on my training and experience, Fowler may have observed this press conference or a related news story, as Fowler told Ohio FBI Agents on November 16, 2023, that he had heard about a New Mexico case on the news that upset him.

26.     On December 8, 2023, the Victim informed me that he recalled LCPD Chief Story made a vague reference about the DA's Office during the press conference.  The Victim believed it was mentioned that upon the conclusion of the OIS task force review, the case would be forwarded to the DA's office.  The Victim was unaware if a reference to him personally was made during the press conference.

27.     I compared the voice captured in the threatening message left for the Victim on October 26, 2023, to Donald Fowler's voice captured on the recorded interview conducted by FBI Agents in Ohio on November 16, 2023.  I believe the voices on both recordings are from Donald Fowler.

28.     On November 28, 2023, Fowler was arrested in Ohio by local law enforcement, pursuant to a federal arrest warrant issued in the District of New Mexico by United States Magistrate Judge Kevin R. Sweazea (23-1670 MJ) on November 22, 2023.  At the time of arrest, Fowler was in possession of several items, including a gray Samsung cell phone (SUBJECT

PHONE). Those items were seized by local law enforcement incident to arrest. On November 29, 2023, FBI Agents took possession of Fowler and the seized items, including the SUBJECT PHONE, which was later placed into FBI evidence.

29.     On December 5, 2023, I spoke with FBI SA Carson Gossmeyer, who told me he spoke with Fowler on November 28, 2023. SA Carson used the phone number assigned to the SUBJECT PHONE to call Fowler and ask him to turn himself in. During his arrest later that day, Fowler called SA Gossmeyer using the SUBJECT PHONE to tell him he was being arrested by local law enforcement. I believe the SUBJECT PHONE was used by Fowler to threaten the Victim on October 26, 2023.

30.     Based on my training and experience, I believe Donald Fowler sent a threatening message on October 26, 2023, from Ohio that was received by the Victim the same day in New Mexico. Fowler used the SUBJECT PHONE, an instrument of interstate commerce, to send the message. I believe the recorded message contained a true threat to injure the Victim. The Victim told the FBI he felt the threat was real and that the threat was directed at the Victim.

31.     Based on my review of this case, I believe Fowler did research on the LCPD OIS that he referenced in his phone call to the Victim. I believe this because Fowler would likely have had to conduct research to obtain information about the Victim. Furthermore, Fowler told FBI agents on November 16, 2023, that he had observed several videos regarding the police. Based on my training and experience, I believe that most people use their phone to look up news stories because a cell phone is essentially a handheld computer that we carry around with us all day and is often used to access the news. Accordingly, I believe that there could be incriminating evidence on the SUBJECT PHONE beginning on October 17, 2023, the date that the LCPD issued a press release about the October 3, 2023, OIS.

32.     Additionally, when FBI Agents met with Fowler on November 16, 2023, they asked him to confirm his phone number. Fowler refused to do so. Based on my training and prior experience working threat cases, I believe it is likely Fowler may have attempted to delete any potential incriminating information on his phone, as he knew the FBI was aware of the threat made by him to the Victim. From my training and experience, I know that when phone dumps occur, law enforcement is often able to uncover deleted material or at least discern that material has been deleted from a phone. Accordingly, I believe there may be evidence on Fowler's phone beginning on October 17, 2023, the date of the LCPD press release, through November 28, 2023, the date Fowler was arrested.

33.     I further believe that Fowler used the SUBJECT PHONE in furtherance of the crime he committed to threaten the Victim. As the initial records obtained by the FBI revealed, Fowler used the SUBJECT PHONE to call Victim and leave a threatening voicemail from a blocked number.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

35.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

a.      Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files

downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives----contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

36.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

the Device was used, the purpose of its use, who used it, and when. There is probable cause to

believe that this forensic electronic evidence might be on the Device because:

a.      Data on the storage medium can provide evidence of a file that was once on the

storage medium but has since been deleted or edited, or of a deleted portion of a file

(such as a paragraph that has been deleted from a word processing file). Virtual memory

paging systems can leave traces of information on the storage medium that show what

tasks and processes were recently active. Web browsers, e-mail progfttms, and chat

programs store configuration information on the storage medium that can reveal t4

information such as online nicknames and passwords. Operating systems can record

additional information, such as the attachment of peripherals, the attachment of USB

flash storage devices or other external storage media, and the times the computer was in

use. Computer file systems can record information about the dates files were created and

the sequence in which they were created. a. Forensic evidence on a device can also

indicate who has used or controlled the device. This "user attribution" evidence is

analogous to the search for "indicia of occupancy" while executing a search warrant at a

residence.

b.      A person with appropriate familiarity with how an electronic device works may,

after examining this forensic evidence in its proper context, be able to draw conclusions

about how electronic devices were used, the purpose of their use, who used them, and

when.

c.      The process of identifying the exact electronically stored information on a storage

medium that are necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review team and

passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

37.     *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

38.     *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a residence. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

39.     I submit that this affidavit supports probable cause for a search warrant of the item described in Attachment A to seek the items described in Attachment B.

40.     Assistant United States Attorney Niki Tapia-Brito reviewed and approved this search warrant application.

41.     I declare under penalty of perjury that the foregoing is true and correct to the best
of my knowledge.

Respectfully submitted,

Armida Maria Macmanus
Special Agent
Federal Bureau of Investigation

Electronically signed and telephonically sworn on ___December 19_____, 2023

B. Paul Briones
United States Magistrate Judge